**ZALE CORPORATION, Appellant,**

v.

**Robert S. CALVERT, Comptroller of Public Accounts, et al., Appellees.**

**No. 11942.**

Court of Civil Appeals of Texas, Austin.

Nov. 29, 1972.
Rehearing Denied Dec. 20, 1972.

**178**

T. B. Wright Long, Coleman, Wright & Merriman, Austin, for appellant.

Crawford C. Martin, Atty. Gen. of Texas, J. H. Broadhurst, Asst. Atty. Gen., Austin, for appellees.

PHILLIPS, Chief Justice.

This is a suit to recover the Store License Taxes or Chain Store Taxes as provided in Chapter 17, Title 122A, Taxation General, Vernon's Ann. Revised Civil Statutes of Texas, which have heretofore been paid under protest by Appellant, Zale Corporation.

The Comptroller of Public Accounts of the State of Texas demanded that appellant pay the taxes on 37 of its jewelry departments located within large department stores or discount stores such as K-Mart, Woolco, Treasure City Stores, Globe, Gulf-Mart and Food Giant Stores.

Appellant Zale paid $141,415.16 under protest which was the amount of the tax demanded by the Comptroller on appellant's jewelry departments for the years 1962 through 1969. Subsequent to the filing of its original petition, appellant has on three occasions paid a total of $57,203.25 under protest which was that total amount of the taxes demanded by the Comptroller on appellant's jewelry departments for the years 1970, 1971 and 1972.

The case was tried to the court sitting without a jury after which the court entered its judgment that appellant take nothing.[1]

We affirm.

Appellant complains here of the judgment of the trial court only as it holds appellant liable for the tax on the jewelry departments located in the K-Mart and Woolco Department Stores.

1. The trial court filed findings of fact and conclusions of law which are as follows:

FINDINGS OF FACT

"Although the Zale Corporation was owner and operator of the business conducted within the jewelry departments of the Woolco Stores in question, F. W. Woolworth Company at all times involved in this litigation had the right to and did substantially control the operation and maintenance of the jewelry departments in the Woolco Stores in which Zale Corporation is the licensee of such jewelry departments, but to a lesser extent Zale Corporation also had the right to and did control the operation and maintenance of such departments."

\* \* \* \* \*

"The total Store License Tax or Chain Store License Tax paid under protest by Zale Corporation on the licensed jewelry departments located in the Woolco Stores in question is $6,775.80."

CONCLUSIONS OF LAW

\* \* \* \* \*

"Zale Corporation by virtue of its ownership and operation of the licensed jewelry departments in Woolco Stores in question owes a Store License Tax or Chain Store Tax upon such licensed departments notwithstanding the fact that the substantial control of the operation and maintenance of such jewelry departments is in F. W. Woolworth Company and only a lesser degree of control exists in Zale Corporation and notwithstanding the fact that F. W. Woolworth Company had paid a Store License Tax or Chain Store Tax on the Woolco Stores in question."

The gist of this lawsuit is appellant's contention that it is not liable for the taxes because the operation, maintenance, opening or establishing of the departments is under the control of the owner and operators of the various stores where such departments are located. That the person or corporation which controls the operation, maintenance, opening or establishing of appellant's departments (K-Mart and Woolco) is liable for the tax in question. That since the owners of each of the 37 large department or discount stores wherein the 37 departments are located had previously paid a store license tax or chain store tax, no additional tax is due for the departments in question. That since K-Mart and Woolco had paid a chain store tax on each of their own stores, the tax in dispute is not due the state as the licensed departments in question are included therein under the "one roof doctrine". Calvert v. Weingarten, Inc., 456 S.W.2d 737 (Tex. Civ.App., Austin 1970 no writ). In *Weingarten,* a multi-department mercantile establishment having one ownership and management at one location was regarded as a single unit or store within the language of the chain store tax statute.

We do not agree with appellant's contention; consequently, we overrule it.

The Appellant, Zale Corporation, through its wholly-owned subsidiaries, owned and operated jewelry departments in each of the several large department stores owned and operated by S. S. Kresge Company, the owner and operator of K-Mart Stores in Texas, and jewelry departments in several large department stores owned by F. W. Woolworth Company, known as Woolco Stores.

It is undisputed that the merchandise in the jewelry department is the property of Zale, that it is supplied by Zale, that it is sold by Zale and that Zale Corporation is the company which makes a profit or a loss upon the sale of the merchandise.

Zale entered into written contracts with S. S. Kresge Company and F. W. Wool-worth Company for the right to display and sell their own merchandise in a space occupied by them which is designated as the jewelry department within the larger stores owned and operated by K-Mart and Woolco. Its merchandise is then sold to the public by Zale employees whom it hires and pays; this includes the payment of Workmen's Compensation Insurance on the employees.

Article 17.07, Title 122A, defines a store as:

"The term 'store' as used in this Chapter shall be construed to mean and include any store or stores or any mercantile establishment or establishments not specifically exempted within this Chapter which are *owned, operated, maintained or controlled* by the same person, agent, receiver, trustee, firm, corporation, co-partnership or association, either domestic or foreign, in which goods, wares or merchandise of any kind are sold at retail or wholesale." (Emphasis added.)

It seems to be generally agreed between the parties hereto, and we so hold, that appellant's operation comes within this definition. Hurt v. Cooper, 130 Tex. 433, 110 S.W.2d 896 (1937).

Article 17.01, title 122A provides as follows:

"From and after the passage of this Chapter it shall be unlawful for any person, agent, receiver, trustee, firm, corporation, association or copartnership, either foreign or domestic to *operate, maintain, open or establish* any store or mercantile establishment in this State without first having obtained a license so to do from the Comptroller of Public Accounts as hereinafter provided." (Emphasis added.)

The second paragraph of section (b) of Article 17.02, Title 122A provides:

"The Comptroller is hereby directed to determine the *true ownership* of any store or stores or establishments or de-

partments, regardless of the name or operating name and *collect the tax levied herein accordingly.*" (Emphasis added.)

Article 17.05, Title 122A, provides in part as follows:

"(a) Every person, agent, receiver, trustee, firm, corporation, association or copartnership *opening, establishing, operating or maintaining* one or more stores or mercantile establishments within this state, under the same general *management, or ownership,* shall pay the license fees hereinafter prescribed for the privilege of *opening, establishing, operating or maintaining* such stores or mercantile *establishments.*" (Emphasis added.)

It is significant that the word *or* is used rather than the word *and,* thereby showing the intent of the legislature that any one of the requirements of owning, opening, establishing, operating or maintaining the store makes such person or corporation subject to the chain store tax.

Appellant Zale owns, operates, maintains and, to a considerable extent, controls the departments involved in this lawsuit.

Appellant maintains that between ⅛ and ¼ of all departments in each K-Mart Store are operated directly by S. S. Kresge. The other departments are operated under license agreements. The same department might be licensed in some stores and operated by S. S. Kresge in other stores. Some of the K-Mart licensed departments are operated under license agreements with wholly-owned subsidiaries of S. S. Kresge Co. Every K-Mart has a jewelry department. Appellant Zale has license agreements for fifty-four of such jewelry departments, other licensees have license agreements for nine and S. S. Kresge operates the remaining two hundred thirty-seven. The departments operated under license agreement by wholly-owned subsidiaries of S. S. Kresge are operated in an identical manner to the Zale licensed jewelry departments for all intents and purposes.

Further, appellant maintains that Zale is never allowed to use its name in relation to the jewelry departments. Each department licensed to appellant is operated as K-Mart Fine Jewelry. The license agreements provide that S. S. Kresge shall have the power to promulgate rules and regulations for the conduct of business within the K-Mart Stores. Its store managers and their assistants are in the licensed departments daily, criticizing displays, appearance of personnel, conduct of personnel and violations of store policy. No employee or representative of a licensed department is allowed to have a key to a K-Mart Store; they are not allowed to enter a K-Mart Store at any time except when authorized K-Mart personnel are present in the store. K-Mart designates the location of the licensed departments within the stores. K-Mart provides and owns the fixtures in the licensed departments, and the fixtures are uniform throughout the store. Although Appellant Zale is authorized to employ the personnel for the licensed departments, K-Mart personnel does interview applicants for employment. Further, K-Mart advises licensed departments to employ more employees when such departments appear to K-Mart to be understaffed. K-Mart directs the wages and benefits to be given to licensed department employees, insisting on uniformity of wages throughout each K-Mart Store. K-Mart directs the licensed departments to conform to K–Mart practices in paying for holidays, giving Christmas bonuses, amount of vacation and holidays.

For the purposes of this opinion, the facts applicable to K-Mart are equally applicable to Woolco.

There are other rights of control over appellant's operation reserved to K-Mart (and Woolco) which we do not think necessary to set out in this opinion.

We hold that in spite of the tight control exercised by appellees in their license agreement with Appellant Zale, Zale is a separate business entity operating under a highly restrictive lease or licensing ar-

rangement which renders it subject to the chain store tax, Article 17.01, *supra*.

We cannot agree with appellant's contention that the control features discussed by court and the Attorney General in deciding the *Standard Oil* case and the *Firestone* opinion [2] compel a result different from the one we have reached. In these cases, while the dealers in some instances "bought" and "owned" the merchandise obtained from Standard and Firestone, their arrangements with these companies made them nothing more, in fact, than the companies' agents compelled to sell the companies' products. They were integral parts of the companies.

The case at bar is controlled by the holding of this Court in Calvert v. General Retail Corporation, 390 S.W.2d 10 (Tex.Civ. App., Austin 1965, writ ref. n.r.e.).

We affirm the judgment of the trial court.

Affirmed.

2. Standard Oil Company of Texas v. State, 142 S.W.2d 519 (Tex.Civ.App., Eastland 1940, writ ref.). Opinions of the Attorney General of Texas, Opn. No. 0–307, 1939.